**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff,**

**v.**

**GOODWILL INDUSTRIES OF GREATER NEW YORK & NORTHERN NEW JERSEY, INC.**

**Defendant.**

**Civil Action No. 19-cv-1674**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and under Title I of the Civil Rights Act of 1991 to correct unlawful discrimination by Defendant Goodwill Industries of New York & New Jersey, against Robin Hawker because of his disability. As set forth in greater detail below, Defendant failed to make reasonable accommodations to Hawker's disabilities, such as by failing to give him additional coaching or training or by transferring him to a lower stress environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a) which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful acts alleged below were committed within the jurisdiction of the

United States District Court for the Eastern District of New York.

**PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a) which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant Goodwill Industries of Greater New York & Northern New Jersey, Inc. is a non-profit corporation that provides employment to individuals with disabilities in New York and New Jersey.

5. At all relevant times, Defendant has been a New York non-profit corporation.

6. At all relevant times, Defendant has had at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7) which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

9. At all relevant times, Defendant has continuously had more than 500 employees.

**ADMINISTRATIVE PREREQUISITES**

10. More than thirty (30) days prior to the institution of this lawsuit, Robin Hawker filed a charge with the EEOC, alleging violations of the ADA by Defendant.

11. The EEOC investigated Hawker's charge.

12. On March 6, 2018, the EEOC issued Defendant a Letter of Determination finding

reasonable cause to believe that Defendant violated the ADA by failing to grant Hawker a reasonable accommodation.

13. The EEOC invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

14. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

15. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

16. On September 17, 2018, the EEOC issued to Defendant a Notice of Failure of Conciliation.

17. All conditions precedent to the institution of this suit have been fulfilled.

**STATEMENT OF CLAIMS**

18. Since at least April 5, 2016, Defendant has engaged in unlawful employment practices in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A), when it failed to accommodate Hawker's disability. Specifically:

a. Hawker is an individual with a disability.

b. Hawker has mental impairments that substantially limit him in the major life activities of thinking, speaking, interacting with others, and reading.

c. Hawker was referred to Defendant for employment by WeCARE, a program that provides services to disabled welfare recipients.

d. As part of its referral to Defendant, WeCARE provided Defendant with medical records describing Hawker's impairments and recommending that Hawker work in a low stress environment.

e. Hawker was hired by Defendant as a janitor on July 22, 2016. He was

    hired under a contract with the City of New York to supply disabled workers to clean buildings occupied City agencies and assigned to clean buildings occupied by the New York City Human Resources Administration ("HRA").

f. Defendant was aware of Hawker's disability when it hired him.

g. Hawker received minimal training and direction about how to do his job. When Hawker was hired his training and orientation consisted of solely of instruction on how to clean bathrooms and operate cleaning machinery.

h. Hawker did not receive any training or instruction about how to interact with HRA employees or HRA clients.

i. Hawker was told that only his supervisor could instruct him in how to perform his job.

j. Hawker's supervisor had received no special training on how to work with individuals with disabilities.

k. Hawker did not receive any on-the-job training. His supervisor did not work in the same location and was only available during his shifts by telephone.

l. Eventually Hawker was assigned to clean a floor of a building occupied by the Human Resources Agency ("HRA"). Hawker's assigned floor was open to HRA clients and HRA clients and employees were present on the floor during a substantial portion of his shift.

m. On or about September 16, 2016, Hawker received a written counseling because of his interactions with HRA employees.

n. Hawker was unable to read or understand the September 16, 2016 warning, needed someone to explain the warning to him, and communicated those facts to his supervisor.

o. Other than an instruction not to enter occupied rooms without permission Defendant did not provide Hawker with any additional coaching, training, or counseling about how to interact with HRA employees and clients or how to do his job while HRA employees or clients were in the building.

p. On or about November 22, 2016, Hawker received another written warning due to his interactions with an HRA supervisor.

q. Hawker was unable to read or understand the November 22, 2016 warning, needed someone to explain the warning to him, and communicated those facts to his supervisor.

r. After this discipline Defendant did not provide Hawker with any additional coaching, training, or counseling about how to do his job while HRA employees or clients were in the building.

s. As a result of this discipline, Hawker was moved to the first floor of the building, which had more space open to HRA clients and more difficult to clean.

t. Based on the interactions with HRA staff and clients that Defendant issued Hawker warnings about, and based on its knowledge of Hawker's disability, Defendant knew that Hawker needed additional coaching or training or to be transferred to a location that required less interaction with HRA in order to continue to perform the essential functions of his job.

    u. At no point in Hawker's employment did Defendant engage in an interactive process to attempt to identify an accommodation that would allow Hawker to continue to perform the essential functions of his job.

    v. At no point did Defendant provide Hawker the services of a job coach or other extra coaching or training as a reasonable accommodation.

    w. At no point did Defendant transfer Hawker to a different location that would have required less interaction with HRA staff or clients or that would otherwise provide a less stressful environment, such as the location of his initial assignment.

    x. On January 4, 2017, Defendant terminated Hawker's employment based on an incident involving his interaction with HRA staff. If Defendant had previously provided a reasonable accommodation of Hawker's disability, this incident would have been prevented or avoided.

    y. Defendant's failure to provide reasonable accommodations to Hawker led to his discharge on or about January 4, 2017. If Defendant had accommodated Hawker's disability by, for example, providing him job coaching, Defendant would never have had any reason to terminate Hawker's employment. Similarly, had Defendant transferred Hawker to a different location that would have required less interaction with HRA staff or clients or that would otherwise provide a less stressful environment, it would not have terminated his employment.

19. The unlawful employment practices complained of in paragraph 18 were

intentional.

20. The unlawful employment practices complained of in paragraph 18 were done with malice or with reckless indifference to Hawker's federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate against any individual because they have engaged in activity protected by the ADA;

B. Order Defendant to make Hawker whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including reinstatement or front pay;

C. Order Defendant to make Hawker whole by providing compensation for past pecuniary losses resulting from the unlawful employment practices described above with pre-judgment interest, in amounts to be determined at trial;

D. Order Defendant to make Hawker whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above with pre-judgment interest, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

E. Order Defendant to pay Hawker punitive damages to for its malicious and reckless conduct described above, in an amount to be determined at trial;

F. Grant such further relief as the Court deems necessary and proper in the public interest;

and

G. Award the EEOC its costs in this action.

**JURY TRIAL DEMAND**

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Date: March 25, 2019
New York, New York

Respectfully Submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

JUSTIN MULAIRE
Supervisory Trial Attorney

/s/Sebastian Riccardi
SEBASTIAN RICCARDI
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(212) 336-3698
Sebastian.riccardi@eeoc.gov